Leslie **ACKERMAN**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 29A02–0111–CR–745.

Court of Appeals of Indiana.

Sept. 12, 2002.

J.J. Paul, III, John D. Fierek, Voyles, Zahn, Paul, Hogan & Merriman Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary[1]

1. We heard oral argument in this case on August 6, 2002, in Indianapolis. We com-

Appellant-defendant Leslie Ackerman ("Ackerman") appeals her conviction for operating a vehicle while intoxicated ("OWI")[2] as a Class A misdemeanor. We affirm.

## Issues

Ackerman raises four issues, which we consolidate, restate, and reorder as the following three:

I. whether the trial court abused its discretion in admitting evidence police collected at her home and at the collision scene;

II. whether the trial court properly admitted evidence that the instrument used to test Ackerman's breath alcohol content ("BAC") was functioning properly and whether the trial court properly excluded the testimony of certain defense witnesses regarding the trustworthiness of Ackerman's BAC test result; and

III. whether the State satisfied the corpus delicti rule.

## Facts and Procedural History

At 11:43 p.m. on June 27, 2000, Officer Jason Greer ("Officer Greer") of the Carmel Police Department responded to a report of an accident at 126th Street and River Road in Hamilton County, Indiana. Officer Greer arrived at the scene approximately one minute later and observed a white Corvette that had left the roadway and collided with a tree. The car was damaged and both airbags had deployed, but there was no driver at the scene. Officer Greer checked the license plate and determined that it was registered to a BMW owned by Ackerman, who lived nearby. Officer Greer drove to Ackerman's home with Officer Scott Pilkington ("Officer Pilkington"). Officer Greer knocked on Ackerman's door, and she opened it. Ackerman was crying and talking on the telephone. Although Officer Greer did not verbally ask to enter Ackerman's house, Ackerman stepped aside, allowing Officer Greer to enter. Ackerman admitted to being the driver of the Corvette. At some point after Ackerman finished her telephone conversation, Officer Greer noticed the smell of alcohol on Ackerman. By that time, Officer Greer had also noticed that Ackerman had slow and slurred speech. Officer Greer asked Ackerman to accompany him to the scene of the collision to complete an accident report.

As they were returning in his car to the scene of the collision, Officer Greer questioned Ackerman about her activities that evening. She admitted that she had had two chocolate martinis over the course of the evening at a bar in Indianapolis; that a passing motorist had taken her home from the scene of the collision; and that she had been home approximately five minutes when Officer Greer arrived.

When they arrived at the scene of the collision, Officer Greer read Ackerman her *Miranda* rights. After Ackerman waived her *Miranda* rights, Officer Greer asked her again about her activities that evening. Ackerman's answers confirmed what Officer Greer had learned at her home and in his car. Officer Greer then administered the horizontal gaze nystagmus, walk-and-turn, and one-legged-stand field sobriety tests ("FSTs"), all of which Officer Greer videotaped and all of which Ackerman failed. Officer Greer then administered a portable breath test ("PBT") to Ackerman.

Two other police officers observed Ackerman at the collision scene. Officer Michael Mabie ("Officer Mabie") noticed that

mend counsel for their preparation and for their exceptional oral and written advocacy.

2. Ind.Code § 9–30–5–2.

Ackerman smelled of alcohol, had red eyes and dilated pupils, and seemed unsteady on her feet. Officer Jeff Horner ("Officer Horner") also smelled alcohol on Ackerman.[3] After Ackerman failed the FSTs, Officer Greer read Ackerman the Indiana Implied Consent form,[4] and she agreed to submit to a breath test for BAC. Officer Greer handcuffed Ackerman and drove her to the Carmel Police Department, where Officer Horner tested her BAC on the BAC DataMaster ("DataMaster"). After the test indicated that Ackerman's BAC was 0.15 grams of alcohol per 210 liters of breath, Officer Greer arrested her.

On June 28, 2000, the State charged Ackerman with OWI and with operating a vehicle with an unlawful BAC,[5] a Class C misdemeanor. On April 27, 2001, Ackerman filed a motion in limine and a motion to suppress all evidence collected by the police after Officer Greer entered her home. On June 8 and 11, 2001, the trial court held a hearing on Ackerman's motions, which the trial court denied except as to evidence regarding the PBT.

On June 26, 2001, a jury found Ackerman guilty as charged. The trial court entered judgment on the OWI charge only, noting that the unlawful BAC charge was a lesser-included offense of OWI. Ackerman now appeals.

### Discussion and Decision

#### I. Admission of Evidence [6]

Ackerman claims that Carmel police violated various of her constitutional rights during their investigation on June 27 and 28, 2000, and that the trial court therefore erred in denying portions of her motion to suppress and overruling various objections at trial.

> The admissibility of evidence is within the sound discretion of the trial court. We will not disturb its decision absent a showing that the trial court abused its discretion. Upon review of a trial court's ruling on a motion to suppress evidence, we will examine the evidence most favorable to the ruling, together with any uncontradicted evidence.

*Johnson v. State,* 710 N.E.2d 925, 927 (Ind. Ct.App.1999) (citations omitted). Our standard of review of rulings on the admissibility of evidence is the same whether the challenge is made by a pre-trial motion to suppress or by a trial objection. *See Gibson v. State,* 733 N.E.2d 945, 951 (Ind.Ct. App.2000) ("When ruling on the admissibility of evidence, the trial court is afforded

---

**3.** Neither Officer Mabie nor Officer Horner testified at the suppression hearing; therefore, we do not consider their testimony in our review of the trial court's denial of Ackerman's motion to suppress.

**4.** According to Officer Greer, the Indiana Implied Consent form informs a suspect that the police officer has probable cause to believe that the suspect has committed OWI and that the suspect's license will automatically be suspended for one year if she does not consent to the test. *See* Appellant's App. at 541; *see also* Ind.Code § 9–30–6–1 *et seq.*

**5.** Ind.Code § 9–30–5–1(a).

**6.** We note that Ackerman did not raise in her motion to suppress either the alleged *Miranda* violation or Officer Greer's failure to advise

her that she may consult with an attorney before he administered FSTs. At trial, Ackerman did not object to any evidence on the basis that it was obtained in violation of *Miranda*. "When a defendant does not properly bring an objection to the trial court's attention so that the trial court may rule on it at the appropriate time, he is deemed to have waived that possible error." *Ingram v. State,* 547 N.E.2d 823, 829 (Ind.1989). Waiver notwithstanding, we address Ackerman's *Miranda* claim on its merits. By objecting on the proper grounds at trial, Ackerman has properly preserved her claim that she was entitled to be advised that she may consult with an attorney before Officer Greer administered FSTs. *See* Appellant's App. at 516. For simplicity's sake, we review all of Ackerman's suppression claims under the heading "Admission of Evidence."

broad discretion, and Indiana appellate courts will only reverse the ruling upon a showing of abuse of discretion.... [W]e consider the evidence most favorable to the trial court's ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling.") (citations omitted).

Ackerman claims that Officer Greer violated her Fourth Amendment[7] right against unreasonable searches when he entered her home; that Officer Greer violated her Fifth Amendment[8] right against self-incrimination when he questioned her at her home and in his car; and that Officer Greer again violated her Fourth Amendment right against unreasonable searches when he failed to advise her that she may consult with an attorney before he administered the FSTs. We address each claim in turn.

### A. Officer Greer's Entry into Ackerman's Home

Ackerman contends that Officer Greer's entry into her home was unlawful and that the trial court abused its discretion in denying her motion to suppress all evidence gathered after Officer Greer entered her home. Specifically, Ackerman claims that Officer Greer's warrantless entry into her home was an unreasonable search in violation of her Fourth Amendment rights and that all evidence collected subsequent to the violation should have been excluded.

"To generally deter police from violating people's Fourth Amendment rights, the Supreme Court created the exclusionary rule, which prohibits the admission of evidence seized in violation of the Fourth Amendment." *Caudle v. State,* 754 N.E.2d 33, 34 (Ind.Ct.App.2001), *trans. denied.*

The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. Warrantless searches and seizures inside the home are presumptively unreasonable. When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. One well-recognized exception to the warrant requirement is a voluntary and knowing consent to search.

*Krise v. State,* 746 N.E.2d 957, 961 (Ind. 2001) (citations omitted). "When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given." *Lyons v. State,* 735 N.E.2d 1179, 1185 (Ind.Ct.App.2000), *trans. denied* (2002). "The voluntariness of this consent to search is a question of fact to be determined from the totality of the circumstances." *Id.* "[A]n express consent is not a requirement for a valid consent search. The circumstances surrounding the search may demonstrate that the party involved implicitly gave consent, by word or deed." *State v. Jorgensen,* 526 N.E.2d 1004, 1006 (Ind.Ct.App.1988). "A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law." *Lyons,* 735 N.E.2d at 1185.

---

7. The Fourth Amendment to the United States Constitution reads as follows:

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

8. The Fifth Amendment to the United States Constitution reads in relevant part that "[no person] shall be compelled in any criminal case to be a witness against himself[.]"

We note many similarities between the circumstances of Officer Greer's entry in the instant case and the circumstances of the police officers' entry in *Jones v. State,* 409 N.E.2d 1254 (Ind.Ct.App.1980). Acting on an anonymous tip indicating the presence of heroin inside a motel room, two police officers approached the door of the room without a search warrant. *See id.* at 1256. After knocking once, the officers observed the drapes parting as a woman inside the room peered out a window at them. *See id.* Soon thereafter, additional officers posted behind the motel saw a person later identified as Jones throw a foil package containing heroin out a window. *See id.* After the officers knocked a second time, Jones opened the door. *See id.* When the officers identified themselves, Jones "stepped back and indicated for the officers to enter." *Id.*

The *Jones* court concluded that, under the circumstances, Jones had consented to the entry. *Id.* Citing to *Robbins v. MacKenzie,* 364 F.2d 45 (1st Cir.1966), the *Jones* court acknowledged that when a person opens a door without knowing the visitor's identity, only to be faced unexpectedly with the presence of the authorities, that person's act of stepping back may only be a retreat and not a manifestation of consent to entry. *See Jones,* 409 N.E.2d at 1256. However, the *Jones* court noted that the woman's peering through the drapes followed by the disposal of the heroin raised the obvious inference that Jones knew that the persons outside were police officers. *See id.* The *Jones* court therefore interpreted his act of stepping aside as one of invitation and not of retreat. *See id.*

▮ At the suppression hearing in the instant case, Officer Greer testified that he observed Ackerman inside her home through a sidelight next to her door. *See* Appellant's App. at 241. Ackerman testified that she observed someone through the sidelights as she approached the door, although she also testified that she could not recall whether she realized at that point that he was a police officer. *See id.* at 273. Having recently been involved in a collision, Ackerman very likely expected the police to arrive at any time, and there is a reasonable inference that she recognized that Officer Greer was a police officer as she peered out her window before opening the door. The evidence most favorable to the trial court's ruling indicates that Ackerman's act of stepping aside was an invitation and not a retreat.

Moreover, nothing in the record indicates that Ackerman's consent was the result of fraud, duress, fear, intimidation, or merely a submission to the supremacy of the law. She testified during cross-examination that Officer Greer did not force his way into her home, *see id.* at 278–79; that he did not threaten her in any way, *see id.* at 279; that he did not act in an angry or forceful manner, *see id.;* that he did not handcuff her or put her in his car at that point, *see id.;* and that he never showed his gun to her. *See id.* The trial court properly denied Ackerman's motion to suppress the evidence gathered after Officer Greer entered her home.

### B. Questioning at Ackerman's Home and in Officer Greer's Car

Ackerman claims that Officer Greer's questioning of her in her home and in his police car on the way to the collision scene amounted to a violation of her Fifth Amendment right against self-incrimination. She contends that the statements she made before Officer Greer advised *Miranda* rights should have been suppressed as products of custodial interrogation and further contends that the statements she made after the *Miranda* advisement should have been suppressed because they were "tainted by . . . her interrogation prior to [Officer Greer advising her of her] *Miranda* [rights]." Appellant's Br. at 12.

In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court "h[e]ld ... that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id.* at 318, 105 S.Ct 1285. Ackerman does not contend that either her answers to Officer Greer's pre-*Miranda* questioning or her waiver of her *Miranda* rights at the scene of the collision were coerced. The trial court properly admitted Ackerman's post-*Miranda* statements. Because her post-*Miranda* admissions were for all intents and purposes identical to her pre-*Miranda* admissions, we need not address the admissibility of the latter.

### C. Right to Consult with Counsel

Ackerman contends that FSTs are searches governed by the Fourth Amendment and Article I, Section 11 of the Indiana Constitution and that she was in custody when Officer Greer administered the FSTs. Given that Officer Greer failed to advise her that she may consult with counsel before administering the FSTs, Ackerman contends that all evidence of the FSTs must be suppressed under *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975).

In *Pirtle*, our supreme court held

> that a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent.[9] This right, of course, may be waived, but the burden will be upon the State to show that such waiver was explicit, and, as in *Miranda*, the State will be required to show that the waiver was not occasioned by the defendant's lack of funds.

*Id.* at 29, 323 N.E.2d at 640. Our supreme court further refined the doctrine as follows in *Jones v. State*, 655 N.E.2d 49 (Ind. 1995):

> A person in custody must be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given.... *Giving an arrestee* Miranda *warnings before commencing interrogation does not sufficiently inform him of his right to consult with counsel prior to consenting to a search.*

*Id.* at 54 (citations omitted, brackets removed, and emphasis added).

It is undisputed that Officer Greer did not advise Ackerman of her right to consult with counsel before administering the FSTs. *Pirtle* requires that we make the following two inquiries: (1) the threshold inquiry of whether Ackerman was in custody when Officer Greer administered the FSTs; and (2) whether FSTs are governed by the *Pirtle* doctrine.

### 1. Custody

Ackerman contends that she was in custody before Officer Greer adminis-

---

**9.** *Pirtle* doctrine is based on the right to counsel guaranteed by Article I, Section 13 of the Indiana Constitution, which provides in relevant part that "[i]n all criminal prosecutions, the accused shall have the right ... to be heard by himself and counsel." Our supreme court acknowledged *Pirtle's* constitutional underpinnings in *Sims v. State*, 274 Ind. 495, 413 N.E.2d 556 (1980). The *Sims* court noted that

> our decision in *Pirtle* is based upon the long recognized right of an accused in this state to have counsel at all critical stages following the point of arrest. *Suter v. State*, (1949) 227 Ind. 648, 88 N.E.2d 386; *Dearing v. State*, (1950) 229 Ind. 131, 95 N.E.2d 832; Art. I, § 13, Indiana Constitution. As can be seen, it is not based solely upon the Fourth, Sixth and Fourteenth Amendments to the United States Constitution.... Under Indiana law, to confer a right by law, is also to confer everything necessary for its protection, although no specific mention of added measures is made. *Batchelor v. State*, (1920) 189 Ind. 69, 125 N.E. 773.

*Id.* at 501–02, 413 N.E.2d at 559–60.

tered the FSTs at the scene of the collision. "Whether a defendant is in custody for purposes of the Fourth Amendment ... is governed by an objective test." [10] *West v. State*, 755 N.E.2d 173, 178 (Ind. 2001). "Ultimately, the question is whether a reasonable person under the same circumstances would have believed that [s]he was under arrest or not free to resist the entreaties of the police." *Id.* at 178–79.

We conclude that Ackerman was in custody after Officer Greer advised her of her *Miranda* rights at the collision scene. We believe that the combination of the following factors would cause a reasonable person to believe that she was no longer free to resist the entreaties of the police: (a) Officer Greer's transportation of Ackerman away from her home to the collision scene; (b) Ackerman's admissions to Officer Greer; and (c) Officer Greer's advisement to Ackerman of her *Miranda* rights. We address each factor in turn.

### a. Transportation Away From Home

Officer Greer drove Ackerman from her home to the collision scene. The facts of the instant case differ significantly from those of a typical impaired-driving stop, in which a police officer observes erratic driving and then pulls a vehicle over. Even though the stop might be far from the driver's destination, the vehicle is still operational, and, presumably, if the driver is found to be unimpaired, she will be allowed to go on her way. Ackerman could not have driven her car home in any event.

### b. Ackerman's Admissions

At her home, Ackerman admitted to being the driver of the Corvette, which was an admission of leaving the scene of an accident.[11] Additionally, while in Officer Greer's car Ackerman admitted to drinking and driving. Ackerman's admissions are similar to the admission of the defendant in *State v. Linck*, 708 N.E.2d 60 (Ind.Ct.App.1999), *trans. granted and later withdrawn.* In that case, Linck admitted to police officers that he had been smoking marijuana. *See id.* at 63 ("By informing the officers that he had just smoked the marijuana, Linck admitted to engaging in illegal activity, confirming the officers' suspicions and the original complaint [by a neighbor of illegal drug use].... [W]e agree with the trial court that a reasonable person would not have felt free to leave. Thus, Linck was in custody for purposes of *Miranda* after he admitted smoking the marijuana."). We do not consider Ackerman's admissions to be as damning as Linck's, and we certainly do not consider them to be dispositive as to custody, as the *Linck* court apparently considered Linck's to be. Linck's and Ackerman's admissions are easily distinguished in that while smoking marijuana is always illegal, leaving the scene of an accident and drinking and driving are not.

---

**10.** In her custody argument in her appellate brief, Ackerman cites to Article I, Section 11 of the Indiana Constitution and points out that "[u]nder Indiana's Constitution the State must prove the police behavior was reasonable." Appellant's Br. at 12. While this is true, Ackerman does not explain how our analysis of this issue under this standard in the instant case would be different from an analysis under the federal standard. Because Ackerman fails to cite to any authority or make any argument specific to Article I, Section 11 concerning custody, she has waived her Indiana constitutional argument on this issue. *See Francis v. State*, 764 N.E.2d 641, 647 (Ind.Ct.App.2002) ("[B]ecause Francis failed to provide us with an analysis of his Indiana constitutional claim separate from the federal analysis, he has waived any claim of error.").

**11.** *See* Ind.Code § 9–26–1–4 (providing that a driver must remain at the scene of a property damage accident and provide certain information to the property owner or notify the local sheriff or police if the property owner cannot be found).

However, we do consider the admissions relevant to the question of custody, as a reasonable person would be aware that admitting to leaving the scene of an accident and drinking and driving could very well be an admission of potentially illegal activity.

#### c. Miranda *Warnings*

Officer Greer read Ackerman her *Miranda* rights upon arriving at the scene of the collision. Our supreme court has specifically cited the advisement of *Miranda* warnings as a factor to be considered in determining custody for purposes of *Pirtle*. In *Torres v. State*, 673 N.E.2d 472 (Ind.1996), police handcuffed Torres and advised him of his *Miranda* warnings. Our supreme court concluded that Torres was in custody at that point, specifically citing the restriction on Torres' freedom and that he was "interrogated in a manner implicating the Fifth Amendment and necessitating the giving of *Miranda* warnings." *Id.* at 474 (citation omitted). In *Jones*, 655 N.E.2d 49, the suspect was standing next to his car in the presence of several officers when he consented to a search of the car. In determining that Jones was not in custody when he consented to the search, the *Jones* court specifically noted that Jones had not been Mirandized before he gave his consent. *See id.* at 56 ("Jones was never in the care and control of the police or interrogated in a manner implicating the Fifth Amendment and necessitating the giving of *Miranda* warnings.").

It may be that Officer Greer did not yet consider Ackerman to be in custody even after he advised her of her *Miranda* rights, but he did not share his belief with Ackerman. *See Stansbury v. California*, 511 U.S. 318, 325, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) ("An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned."). As with Ackerman's admissions, we do not consider Officer Greer's reading of *Miranda* warnings to be dispositive as to custody in the instant case. We note, for example, that Torres was also restrained by handcuffs when advised of his *Miranda* rights, whereas Ackerman was not.

While we consider no one factor to be dispositive, we conclude that a reasonable person who was transported from home with no obvious means of returning, had admitted possible illegal activity to police, and then finally was advised of her *Miranda* rights would no longer feel free to resist the entreaties of the police. We now determine whether FSTs are governed by *Pirtle*.

#### 2. *FSTs and* Pirtle

Ackerman contends that FSTs are searches governed by Article I, Section 11 of the Indiana Constitution ("Section 11")[12] and further contends that, as searches, they are governed also by *Pirtle*. We address each contention in turn.

#### a. *Whether FSTs are Searches*

As no Indiana court has previously addressed the issue,[13] we are presented with a question of first impression. Article I, Section 11 of the Indiana Constitution reads as follows:

---

**12.** Ackerman claims that FSTs are searches under both the United States and Indiana Constitutions. Essentially, Ackerman has argued this issue exclusively under Section 11, mentioning the Fourth Amendment only in passing and citing no federal cases. We therefore evaluate the nature of field sobriety testing under Section 11 only.

**13.** This court has mentioned FSTs in a Fourth Amendment context, but has never specifically held that they constitute searches under the Fourth Amendment. *See Snyder v. State*, 538 N.E.2d 961, 963 (Ind.Ct.App.1989) ("[L]imited 'non-invasive' search[es include] such [things] as a 'pat down' for weapons, a license and registration check, *or field sobriety tests.*") (emphasis added), *trans. denied* (1990).

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The wording of Section 11 is similar to that of the Fourth Amendment, but our supreme court recently observed that

[t]he Indiana Constitution has unique vitality, even where its words parallel federal language. We resolve Indiana constitutional claims by "examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions."

. . . .

. . . . We have previously held that Article I, Section 11 must be liberally construed to protect Hoosiers from unreasonable police activity in private areas of their lives. Rather than looking to federal requirements such as warrants and probable cause when evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable.

*State v. Gerschoffer,* 763 N.E.2d 960, 965 (Ind.2002) (citations omitted). Even though our analysis of claims arising under Section 11 is separate and distinct from Fourth Amendment analysis, federal law and the law of sister states may have persuasive force. *See Linke v. NW Sch. Corp.,* 763 N.E.2d 972, 977 (Ind.2002).

The threshold question is whether FSTs are searches governed by Section 11. We do not hesitate to answer this question in the affirmative. "In the law of searches and seizures, the term 'search' implies prying into hidden places for that which is concealed." *Moran v. State,* 644 N.E.2d 536, 540 (Ind.1994) (citation omitted). FSTs are designed to uncover hidden evidence of impairment that the OWI suspect seeks to conceal. Quite simply, FSTs allow police to discover impairment in some persons who are not obviously impaired. Because they may reveal that which is concealed, FSTs are clearly searches governed by Section 11. We must now determine whether FSTs are searches governed by *Pirtle.*

### b. Whether FSTs are Governed by Pirtle

In *Pirtle,* police already suspected Pirtle's involvement in a murder when they arrested him on an unrelated charge, but had no evidence linking him to the murder. *See Pirtle,* 263 Ind. at 21, 28, 323 N.E.2d at 636, 640. Police had already had Pirtle in custody for twelve hours and had repeatedly violated his *Miranda* rights [14] when they asked for and received his consent to an unlimited search of his apartment. *See id.* at 21–23, 323 N.E.2d at 636–37. Upon searching Pirtle's apartment, the police found inculpatory evidence that led to his arrest and conviction for murder. *See id.* at 22–23, 323 N.E.2d at 637.

The *Pirtle* court noted that the "decision to consent to an *unlimited search* is a vital stage in the prosecutorial process." *Id.* at 26, 323 N.E.2d at 639 (emphasis added). The *Pirtle* court also noted the many pro-

---

**14.** Although the *Pirtle* court noted that Pirtle's "consent was a product of a violation of [his] *Miranda* rights" and therefore could not "serve to legitimate the warrantless search of [his] apartment[,]" *Pirtle,* 263 Ind. at 25, 323 N.E.2d at 638, *Pirtle's* holding contains no reference to *Miranda* rights. In other words, the police need not violate a person's *Miranda* rights for *Pirtle* doctrine to apply.

tections of one's right against unreasonable searches and seizures that are waived when one consents to a search requiring probable cause:

> A search warrant may issue only upon probable cause supported by an affidavit particularly describing the place and property to be searched. Only a neutral magistrate may issue the warrant. It must include enough information to allow the magistrate himself to determine whether there is probable cause for a search. The information must be based on the officer's personal knowledge or on a credible tip from a reliable informer. *A person who consents to a search gives up all these protections and subjects himself to a general search without probable cause.*

*Id.* at 26–27, 323 N.E.2d at 639 (emphasis added and citations omitted). "No one told [Pirtle] that if he refused consent, the officers would have to specify *what they were looking for and their reasons for believing appellant had those items in order to get a search warrant.*" *Id.* at 28, 323 N.E.2d at 640 (emphasis added). The *Pirtle* court expressed understandable concern that a person in custody without benefit of counsel might waive numerous constitutional protections by consenting to a general, unlimited search. "We ... have no doubt that the presence of counsel would be useful in preventing substantial prejudice." *Id.* at 27, 323 N.E.2d at 639.

■ Given the *Pirtle* court's concerns, we conclude that the purpose of the *Pirtle*

doctrine is to ensure that no person in custody consents to an unlimited search unless she is fully informed of the constitutional rights she is waiving. The purpose of the doctrine is served by the requirement that a person in custody be advised that she may consult with an attorney before consenting to the unlimited search. *See id.* at 29, 323 N.E.2d at 640.

We note that the only four Indiana opinions in which our supreme court has applied the *Pirtle* doctrine have all addressed police searches of either dwellings or automobiles. *See Torres,* 673 N.E.2d 472 (apartment); *Martin v. State,* 490 N.E.2d 309 (Ind.1986) (automobile); *Sims,* 274 Ind. 495, 413 N.E.2d 556 (apartment); *Pirtle,* 263 Ind. 16, 323 N.E.2d 634 (apartment). Put another way, our supreme court has only applied *Pirtle* where, without the suspect's consent, the search in question was a general, unlimited search and would only have been reasonable with probable cause.

■ We now determine whether application of the *Pirtle* doctrine in the instant case serves the purpose of the doctrine. FSTs are qualitatively different from the general, unlimited searches that concerned the *Pirtle* court. FSTs are non-invasive and take little time to administer. More importantly, in our view, FSTs are narrow in scope and are unlikely to reveal any incriminating evidence other than impairment. Because probable cause is not required to administer FSTs,[15] the constitutional concerns expressed by the *Pirtle*

---

15. Several Indiana cases clearly indicate that a police officer typically administers FSTs to *develop* probable cause, not because the officer already possesses probable cause. *See, e.g., Cooper v. State,* 761 N.E.2d 900, 903 (Ind.Ct.App.2002) ("We agree ... that the results of a properly administered [horizontal gaze nystagmus] test are admissible to show impairment which may be caused by alcohol and, when accompanied by other evidence, will be sufficient to establish probable cause

to believe a person may be intoxicated."); *State v. Huber,* 540 N.E.2d 140, 140–41 (Ind. Ct.App.1989) ("After conducting field sobriety tests, the trooper determined that he had probable cause to request Huber to submit to a breathalyzer test."), *trans. denied; Huey v. State,* 503 N.E.2d 623, 625 (Ind.Ct.App.1987) ("[W]hen Huey failed the field sobriety tests, Officer McGlinsey had probable cause to arrest Huey.").

court simply are not relevant. We conclude that it would not serve the purpose of the *Pirtle* doctrine to extend it to apply to field sobriety testing. We hold that police are not required to advise a person in custody that she may consult with an attorney before administering FSTs.[16]

\* \* \*

In summary, we conclude that FSTs are searches governed by Article I, Section 11 of the Indiana Constitution. We decline, however, to extend the *Pirtle* doctrine to require the police to advise a person in custody that she may consult with an attorney before administering FSTs. Thus, the trial court did not abuse its discretion in overruling Ackerman's objection to the admission of evidence of the FSTs.

## II. DataMaster Certification and Defense Witnesses

■■ Ackerman contends that the trial court abused its discretion by admitting into evidence the DataMaster certification, which was prepared by the director of the Department of Toxicology at Indiana University School of Medicine.[17] Specifically, she alleges that the regulations governing inspection of DataMaster instruments do not specify sufficiently frequent testing to ensure trustworthiness of BAC test results. Ackerman further contends that the trial court abused its discretion by excluding testimony from two experts on breath

testing: Patrick Demers and J. Robert Zettl. At the suppression hearing, both experts testified concerning the unreliability of BAC DataMaster testing.

■■ We conclude, however, that we need not address Ackerman's arguments concerning either the DataMaster results or the expert testimony. Any error the trial court might have committed with respect to the admission of the DataMaster BAC test result could only be considered harmless.

> When the trial court has erroneously admitted evidence, we "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." We have interpreted this to mean that if, in light of all the evidence in the case, the error has had an insubstantial impact on the jury, the error did not affect the substantial rights of the parties.

*Scalissi v. State*, 759 N.E.2d 618, 625 (Ind. 2001) (citation omitted). "Where the jury's verdict is supported by independent evidence of guilt such that upon review we are satisfied that there was no substantial likelihood that the evidence in question played a part in appellant's conviction, any error in its admission is harmless." *Roche v. State*, 596 N.E.2d 896, 901 (Ind.1992) (citations omitted).

■■ Ackerman was convicted of OWI,[18] for which

---

16. We can easily imagine that the application of the *Pirtle* doctrine in similar contexts could lead to absurd results. For example, strict application of *Pirtle* to all intrusions defined as searches would mean that a suspect in custody, but not yet formally under arrest, could not even be frisked for weapons without first being advised of his right to consult with counsel.

17. Indiana Code Section 9–30–6–5 provides that the director of the Department of Toxicology at the Indiana University School of Medicine shall adopt standards and regulations for the certification of breath test equip-

ment. Compliance with the promulgated standards and regulations is denoted by a certificate the director sends to the clerk of the circuit court of the county in which the equipment is used.

18. In June 2000, when Ackerman's accident occurred, Indiana Code Section 9–30–5–2 defined OWI as "operat[ing] a vehicle while intoxicated[.]" Indiana Code Section 9–13–2–86 defines "intoxicated" as "under the influence of ... alcohol ... so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." In June 2000, Indiana Code Section 9–

there is no statutory requirement of proof of a particular blood alcohol content above which a person is intoxicated. Evidence of the following can establish impairment: (1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety tests; and (7) slurred speech.

*Pickens v. State,* 751 N.E.2d 331, 335 (Ind. Ct.App.2001).

The evidence of Ackerman's intoxication is overwhelming. Ackerman admitted to consuming two chocolate martinis, *see* Appellant's App. at 514; she had red eyes and dilated pupils, *see id.* at 591; three police officers smelled alcohol on her, *see id.* at 513, 591, 621; she had an unsteady gait, *see id.* at 591; she failed all three sobriety tests administered to her, *see id.* at 525, 532, 533; and she had slurred and slow speech. *See id.* at 513. Ackerman also admitted to Officer Greer that the Corvette was hers. *See* Appellant's App. at 513.

Additionally, the trial court specifically instructed the jury as follows:

### COURT'S FINAL INSTRUCTION NO. 9

Prima facie evidence of intoxication includes evidence that at the time of an alleged violation the person had an alcohol concentration equivalent to at least ten-hundredths (.10) gram per 210 liters of the person's breath.

"Prima facie" means that quantity and quality of evidence necessary to prove a fact.

Prima facie evidence creates an inference that the defendant was intoxicated within the meaning of the law. This

inference is not conclusive, however, and may be rebutted by other evidence. *Also, you may reject the inference even if it is not rebutted by other evidence.*

*Also, proof of an alcohol level in the Defendant's breath is not sufficient by itself to establish impairment for the offense of* [OWI].

*Id.* at 99 (emphasis added).

The trial court's instruction to the jury made it clear that their reliance on the BAC test result was neither necessary nor sufficient by itself to find Ackerman guilty of OWI. "When the jury is properly instructed, we will presume they followed such instructions." *Duncanson v. State,* 509 N.E.2d 182, 186 (Ind.1987). Although the jury relied on the BAC test result to find Ackerman guilty of operating a vehicle with an unlawful BAC, we cannot assume, without more, that the jury relied on the BAC test result in finding Ackerman guilty of OWI. We conclude that the BAC test result was relatively unimportant evidence in light of the other evidence presented at trial and that there is no substantial likelihood that it played a part in Ackerman's OWI conviction.

### III. *Corpus Delicti*

Ackerman also contends that the State failed to produce "evidence [beyond Ackerman's statements] that Ackerman was intoxicated at the *time* of the accident" and therefore failed to establish the corpus delicti for OWI. Appellant's Br. at 30. "[T]he corpus delicti rule ... provides that a crime cannot be proven solely on the basis of a confession." *West v. State,* 755 N.E.2d 173, 182 n. 5 (Ind.2001). "The purpose for requiring proof of the corpus delicti is to prevent the admission of a defendant's confession to a crime that never occurred." *Wilkerson v. State,* 728

30-5-1 defined operating a vehicle with an unlawful BAC as "operat[ing] a vehicle with at least ten-hundredths percent (0.10%) of

alcohol by weight in grams in ... two hundred ten (210) liters of the person's breath[.]"

N.E.2d 239, 247 (Ind.Ct.App.2000) (citation omitted). For purposes of satisfying the corpus delicti requirement, "each element of the crime need not be proven beyond a reasonable doubt; the evidence need only provide an inference that a crime was committed." *Id.*

Ackerman's argument that the State must produce independent evidence for each element of OWI to establish the corpus delicti misapprehends the rule. The State established that a few minutes after discovering Ackerman's car wrecked into a tree by the side of the road, police officers smelled a strong odor of alcohol on her and noticed that she had slurred speech. This evidence does not necessarily prove the elements of OWI beyond a reasonable doubt, but constitutes sufficient independent evidence from which the jury could infer that a crime had been committed. The State clearly satisfied the corpus delicti requirement in the instant case.

Affirmed.

SHARPNACK, J., and MATTINGLY–MAY, J., concur.