**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOEL M. SCHUMM**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AARON INGLE, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-CR-538 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kimberly J. Brown, Judge
The Honorable Teresa A. Hall, Master Commissioner
Cause No. 49G16-1102-FD-8691

**April 1, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Aaron Ingle appeals his convictions for three counts of Class D felony neglect of a dependent. He contends that the trial court erred in denying his motion to suppress evidence because the police did not have consent to enter his house and there were no exigent circumstances justifying entry, and that there is insufficient evidence to sustain his convictions. Finding that there was consent for the police to enter Ingle's house and there is sufficient evidence to sustain his convictions, we affirm.

**Facts and Procedural History**

On February 8, 2011, Ingle had full custody of his three children. That night, Ingle made harassing phone calls and sent harassing text messages to his ex-wife, Amanda, and her boyfriend. Ingle was slurring his words, which concerned Amanda that he "was too intoxicated" to take care of the children. Tr. p. 7-9, 21. Around 10:00 p.m., Amanda called the police and asked them to check on the children's welfare.

Indianapolis Metropolitan Police Department Officer Justin Beaton arrived at Ingle's house around 10:15 p.m. to perform a "Check the Welfare of Children" run. Officer Beaton knocked on the door and saw that all the lights were on, one of the children was running through the house wearing a "sagging" and "apparently dirty" diaper, *id.* at 67, the house was in a state of "disarray," *id.* at 27, and tack strips with exposed nails were on the floor. *Id.* at 122. Ingle's uncle, Mark Pearson, answered the door. Officer Beaton said that he was there to check on the welfare of the children and then asked if he could come in and speak with their father. Pearson "didn't say anything, he opened the door, invited [Officer Beaton] into the house." *Id.* at 26. At trial, Officer

2

Beaton testified that Pearson's invitation into the house consisted of him opening the door and stepping out of his way. *Id.* at 123.

Shortly after Officer Beaton arrived, Ingle "staggered out of the back bedroom . . . and appeared to be intoxicated." *Id.* at 28. Officer Beaton tried to have a conversation with Ingle, but Ingle could not stand straight, cursed, and slurred his words. Officer Beaton handcuffed Ingle due to his size, agitation, and level of intoxication. *Id.* at 29.

Investigating the house, Officer Beaton testified at trial that he saw: "All the carpet had been pulled out, it was on the front porch. Um, I noticed paint cans, empty paint cans, paint rollers, tack strips, pieces of wood, exposed nails from the tack strips . . . . condiments that were spilled all over a couch, empty beer bottles, and whiskey bottles." *Id.* at 27. As Officer Beaton walked through the living room, he stepped on a tack strip and the nail punctured the sole of his boot. *Id.* at 39-40.

In the bathroom, Officer Beaton testified that there was "an overwhelming smell of human urine and feces." *Id.* at 32. There was only subflooring and some rotting flooring. The bathtub was filled with water, there was feces in the toilet, vomit on the back of the toilet seat, a used diaper containing feces laying open on the floor, and an assortment of tools scattered on the sink. *Id.* at 33-34. In the kitchen, Officer Beaton saw that there was a kitchen knife on the floor, a layer of "grease and grime on the countertop," "many whiskey bottles, and stacks of cases of empty beer, a beer can, a smoldering cigarette . . . . [and a] lot of decaying food." *Id.* at 34.

None of the children were wearing shoes, the youngest child was wearing only his "diaper, or just a pair of pants," and was covered in wet paint, and the oldest child was

3

wearing only her underwear bottoms. Mice were running throughout the house, and there were mice feces all around. Pearson attempted to clean up the house, but the officers stopped him. Officer Beaton and the other two officers who arrived at the scene took pictures of the conditions of the house and arrested Ingle. The Department of Child Services came and removed the three children from the house.

The State charged Ingle with three counts of Class D felony neglect of a dependent. A bench trial was held, and Ingle was found guilty of all three counts. The trial court sentenced Ingle to 365 days, with 2 days executed and the remainder suspended to probation on each count, to run concurrently. The trial court also entered an order granting alternative misdemeanor sentencing upon Ingle's discharge from probation.

Ingle now appeals.

**Discussion and Decision**

Ingle raises two issues on appeal: (1) whether the trial court erred in denying his motion to suppress evidence because the police did not have consent to enter his house and there were no exigent circumstances and (2) whether there is sufficient evidence to sustain his three convictions for Class D felony neglect of a dependent.

**I. Motion to Suppress**

Ingle contends that the trial court abused its discretion by admitting the evidence gathered by Officer Beaton as a result of his warrantless entry into his house. A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Kimbrough v. State*, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling

4

on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Ind. Evidence Rule 103.

Ingle contends that the trial court abused its discretion in admitting the evidence because it was the product of an unconstitutional search, in violation of his Fourth Amendment rights.[1] The Fourth Amendment to the United States Constitution provides that

> "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

The Fourth Amendment is made applicable to the States via the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 656 (1961). Evidence obtained in violation of a defendant's Fourth Amendment rights may not be introduced against him at trial. *Id.* at 648-60.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by the government. *Patterson v. State*, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011). "Searches performed by government officials without warrants are per se unreasonable under the Fourth Amendment, subject to a 'few specifically established and well-delineated exceptions.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006)

---

[1] Ingle makes no claim under Article 1, Section 11 of the Indiana Constitution and has therefore waived review under that provision.

(quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). When a search is conducted without a warrant, the State bears the burden of proving that an exception to the warrant requirement existed at the time of the search. *Patterson*, 958 N.E.2d at 482.

One well-recognized exception to the warrant requirement is a voluntary and knowing consent to search. *Hill v. State*, 825 N.E.2d 432, 436 (Ind. Ct. App. 2005). A third party can give consent to the search of the premises if he has actual or apparent authority. *Id.* "Under the apparent authority doctrine, a search is lawful if the facts available to the officer at the time would cause a person of reasonable caution to believe that the consenting party had authority over the premises." *Primus v. State*, 813 N.E.2d 370, 374-75 (Ind. Ct. App. 2004).

The evidence in this case shows that Officer Beaton knocked on the door to Ingle's house after 10:00 p.m. and Pearson answered. Officer Beaton explained that he was there to check the welfare of the children and asked if he could come inside and speak with the father. Officer Beaton did not know who Pearson was at that time, but Pearson "didn't say anything, he opened the door, invited [Officer Beaton] into the house." Tr. p. 26. Pearson's invitation into the house consisted of him opening the door and stepping out of Officer Beaton's way. *Id.* at 123.

Ingle contends that Pearson did not have the authority to consent to Officer Beaton's entry into the house, and even if he did, his actions did not rise to the level of consent. Ingle argues that Pearson's stepping back "may only be a retreat and not a manifestation of consent to entry." *Ackerman v. State*, 774 N.E.2d 970, 976 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*.

6

This court in *Ackerman* stated that "[t]he voluntariness of this consent to search is a question of fact to be determined from the totality of the circumstances. [A]n express consent is not a requirement for a valid consent search. The circumstances surrounding the search may demonstrate that the party involved implicitly gave consent, by word or deed." *Id.* at 975 (internal citations omitted). In *Ackerman*, the homeowner saw that the police were outside her door, the police knocked, the homeowner – who was crying and on the phone at the time – opened the door and stepped aside, and the police entered the house. *Id.* at 973. We found that the homeowner's act of stepping aside was an invitation to enter the house rather than a retreat because she knew that it was the police at the door and no force, duress, fear, or intimidation was used to gain entry. *Id.* at 976.

In this case, based on the totality of the facts introduced into evidence, it was not unreasonable for Officer Beaton to conclude that Pearson, an adult who answered the door late at night and let him inside, had the actual or apparent authority to allow his entry into the house. While Pearson's invitation into the house was not express, we find that it was not unreasonable for Officer Beaton to interpret Pearson's actions as consent to enter the house. Officer Beaton told Pearson why he was there, asked if he could come in and asked to speak to the children's father. It was at that point that Pearson stepped aside to allow Officer Beaton into the house. Like in *Ackerman*, Pearson was aware that a police officer was at the door, and no force, duress, fear, or intimidation was used to gain entry, so we similarly find that his action was an invitation and not a retreat. Ingle's argument is merely an invitation to reweigh the evidence, which we will not do.

We therefore find that the trial court did not err in denying Ingle's motion to suppress by finding that Officer Beaton had consent to enter Ingle's house.[2]

## II. Sufficiency of the Evidence

Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. We consider only the evidence most favorable to the judgment and the reasonable inferences draw therefrom and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

Ingle was convicted of Class D felony neglect of a dependent. Indiana Code section 35-46-1-4(a)(1) governs neglect of a dependent and states in relevant part:

> (a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:
> > (1) places the dependent in a situation that endangers that dependent's life or health;
> commits neglect of a dependent, a Class D felony.

Ingle contends that the State failed to show that there was an actual danger to the children's lives or health, and that Ingle was aware of any risk to his children. We disagree.

The evidence presented at trial showed that Ingle's house was an unsanitary and unsafe environment for the children. There were tack strips with exposed nails, decaying

---

[2] Because we find that Officer Beaton had consent to enter Ingle's house, we need not address the issue of whether exigent circumstances existed.

food, mice, mice feces, vomit, and human feces present in the house when Officer Beaton showed up to conduct a welfare check. The conditions were such that when the officers began taking pictures, Pearson attempted to clean up the area. Ingle himself also admits to the disarray in his house, but claims that it was merely temporary, Appellant's Br. p. 10, evidencing his knowledge of the conditions of his house. However, Ingle's claim of the temporary nature of the situation is merely a request for us to reweigh the evidence, which we will not do. It was not unreasonable for the trial court to conclude that Ingle placed his children in a situation that endangered their health. We therefore affirm Ingle's convictions for three counts of Class D felony neglect of a dependent.

Affirmed.

BAILEY, J., and BROWN, J., concur.