## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 08 2017, 7:50 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael G. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Torri Newman,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 8, 2017

Court of Appeals Case No.
49A02-1702-CR-290

Appeal from the Marion Superior Court

The Honorable Alicia A. Gooden, Judge

Trial Court Cause No.
49G21-1411-FA-51440

**Najam, Judge.**

# Statement of the Case

Torri Newman appeals his convictions for possession of cocaine, as a Class C felony; possession of a controlled substance, as a Class D felony; and possession of marijuana, as a Class D felony, following a jury trial. Newman presents four issues for our review, but we address a single dispositive issue, namely, whether the trial court erred when it admitted into evidence at trial the cocaine, ecstasy, and marijuana police officers found in his home after he gave them consent to search the premises. We affirm.

# Facts and Procedural History

On December 11, 2013, members of the Hamilton-Boone County Drug Task Force arranged a controlled buy between a confidential informant ("CI") and Joseph Bobish. In particular, on that date, the CI telephoned Bobish, who told the CI that "he had a local source [who] could deliver" cocaine to Bobish to sell to the CI. Tr. Vol. 2 at 9. The CI and Bobish agreed that the CI would purchase one ounce of cocaine from Bobish at Bobish's residence in Fishers the following day.

Accordingly, on December 12, Carmel Police Department Detective Darin Troyer searched the CI, searched the CI's vehicle, gave him a "covert audio transmitter," and gave him money for the cocaine. *Id.* The CI then drove to Bobish's house. Detective Troyer and another detective followed the CI and kept him under constant audio and visual surveillance during the drive. The CI

parked in front of Bobish's house. After a short time, Bobish arrived at the house, parked his car, and both men walked into Bobish's house together.

[4] Once the two men were inside the house, Detective Troyer monitored their conversation over the audio transmitter, and he could hear that Bobish "spent a decent amount of time on his cell phone[.]" *Id.* at 10. Then Bobish "got what sounded like marijuana" and had a "general conversation" with the CI. *Id.* The sale of cocaine had not yet transpired. At some point, a man later identified as Newman parked his maroon SUV[1] in front of Bobish's residence, and Bobish went outside and talked to Newman "for a short period of time" while Newman remained sitting in his SUV. *Id.* at 11. Bobish then went back inside his home, at which time Detective Troyer "could hear the cocaine transaction occurring between [the CI] and Mr. Bobish." *Id.* In particular, Detective Troyer heard "the money exchange" and "talk about the quality of the cocaine." *Id.* at 11-12. Bobish then went back outside, "went back to [Newman's] vehicle[,] and met with Mr. Newman again for a short period of time." *Id.* at 12. Bobish then returned to his house, and Newman drove off.

[5] Detective Troyer then advised "assisting members of the Drug Task Force" to stop Newman's SUV "under suspicion of being involved in a felony drug deal." *Id.* at 12, 14. Officers initiated a traffic stop, arrested Newman, and transported him to the Fishers Police Department. There, after Detective Matthew

---

[1] Newman was the sole occupant of the SUV.

Kinkade and Major Aaron Dietz had read Newman his *Miranda* rights, Newman did not request an attorney, but he "did not give any statement of any type." *Id.* at 44. Newman did answer a few questions and initially told the officers that he lived on Moonlight Drive in Indianapolis. But, after officers discovered that the license plate on his SUV was registered to him at a residence located on 13th Street in Indianapolis, Newman confirmed that he lived at the 13th Street address. Newman then signed a consent to search form for his residence and gave the officers a key to that home. When officers searched Newman's home, they found 27.5923 grams of cocaine, 100 ecstasy pills, 201.45 grams of marijuana, four firearms, digital scales, plastic baggies, and a package of rubber gloves.

[6] The State charged Newman with dealing in cocaine, as a Class A felony; unlawful possession of a firearm by a serious violent felon, a Class B felony; possession of cocaine, as a Class C felony; possession of a controlled substance, as a Class D felony; and possession of marijuana, as a Class D felony. Newman moved to suppress the evidence officers obtained during the search of his residence, but the trial court denied that motion following a hearing. Before trial, the State dismissed the possession of a firearm count. A jury found Newman guilty of possession of cocaine, as a Class C felony; possession of a controlled substance, as a Class D felony; and possession of marijuana, as a Class D felony; but it acquitted him of dealing in cocaine. The trial court entered judgment accordingly and sentenced Newman to an aggregate term of six years. This appeal ensued.

# Discussion and Decision

[7] Newman contends that the officers violated his Fourth Amendment rights when they arrested him and when they searched his vehicle.[2] These issues present "questions of law we review *de novo*." *Zanders v. State*, 73 N.E.3d 178, 181 (Ind. 2017). As the United States Supreme Court has explained, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal," while "findings of historical fact" underlying those legal determinations are reviewed "only for clear error." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). With that standard in mind, we turn to Newman's arguments on appeal.

[8] Newman first contends that officers did not have probable cause to arrest him during the traffic stop. Thus, he maintains that the evidence against him was obtained in violation of the Fourth Amendment and "should have been excluded from evidence as it was fruit of the poisonous tree." Appellant's Br. at 12. We cannot agree.

[9] An arrest is lawful without a warrant when an officer has probable cause to support the arrest. *Griffith v. State*, 788 N.E.2d 835, 840 (Ind. 2003). Probable cause for an arrest exists when the officer has knowledge of facts and

---

[2] Newman briefly cites to Article 1, Section 11 of the Indiana Constitution to argue that both his arrest and the search of his vehicle were unreasonable. However, Newman fails to develop an independent argument and analysis regarding these facts; therefore, he has waived this claim. *See Ackerman v. State*, 774 N.E.2d 970, 978 n.10 (Ind. Ct. App. 2002) (stating that the failure to cite to any authority or to make a separate argument specific to the state constitutional provision waives the issue on review).

circumstances that would warrant a person of reasonable caution to believe the suspect committed a criminal act. *Id.* The amount of evidence necessary to meet the probable cause requirement for a warrantless arrest is determined on a case-by-case basis. *Id.*

[10] Here, the evidence shows that, the day before the controlled buy, Bobish had told the CI over the telephone that he "had a local source [who] could deliver the cocaine for him." Tr. Vol. 2 at 9. When the CI went to Bobish's house to purchase cocaine, the CI and Bobish were inside his home for a short time and discussed marijuana, but the cocaine transaction did not occur until after Bobish met with Newman, who was parked outside Bobish's residence. When Bobish went back inside after talking to Newman, Detective Troyer "could hear the cocaine transaction occurring between [the CI] and Mr. Bobish." *Id.* at 11. Bobish then went back outside, "went back to [Newman's] vehicle[,] and met with Mr. Newman again for a short period of time." *Id.* at 12. Bobish then returned to his house, and Newman drove off. Detective Troyer testified that, in his experience, the facts and circumstances indicated that Newman had delivered cocaine to Bobish to sell to the CI.

[11] We hold that the evidence shows that the officers had probable cause to initiate the traffic stop and arrest Newman for dealing in cocaine. Accordingly, Newman has not shown that his arrest violated the Fourth Amendment to the United States Constitution. And the trial court did not err when it admitted the evidence officers found during the search of his residence.

[12]    Still, Newman maintains that the contraband seized from his house was inadmissible as fruit of the poisonous tree following an illegal search of his vehicle. In particular, Newman asserts that officers *only* learned his real address after they had conducted an illegal search of his SUV and found the vehicle's registration that listed the 13th Street address. In essence, Newman contends that, had officers not discovered his real address through that purportedly illegal search, he would not have consented to the ensuing search of his residence.[3]

[13]    But the State introduced evidence that officers had discovered Newman's 13th Street address while Newman was driving his SUV, before his arrest and before any search of the SUV, when one of the officers ran his license plate number with the Bureau of Motor Vehicles ("BMV"). And it is well settled that the fruit of the poisonous tree doctrine does not apply when the derivative evidence obtained has an independent source. *Clark v. State*, 994 N.E.2d 252, 272 (Ind. 2013) (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920), *overruled on other grounds by United States v. Havens*, 446 U.S. 620 (1980)). Here, because officers obtained Newman's home address through an independent source, namely, the BMV search, we need not address his claim that the search of his SUV was illegal, and his claim on this issue is without merit. The trial

---

[3] Newman does not otherwise challenge the validity of his consent to search his residence.

court did not err when it admitted into evidence the contraband officers found in his residence.[4]

[14] Affirmed.

Riley, J., and Robb, J., concur.

---

[4] In any event, Detective Troyer testified that officers seized Newman's SUV after his arrest under the civil forfeiture statute. It was reasonable for officers to search the SUV for information regarding the vehicle's owner and to verify Newman's address. *See, e.g.*, *Brune v. State*, 168 Ind. App. 202, 342 N.E.2d 637, 640 (1976) (holding search of car and trailer seized under civil forfeiture statute reasonable because "closely related" to reason for arrest and reason vehicle being held).